REQUESTED BY: Lori McClurg, Director, Dept. of Administrative Services
You have requested an Attorney General's Opinion concerning the language of Neb. Rev. Stat. § 44-1615.01, as it pertains to a policy exclusion by Blue Cross Blue Shield of Nebraska. Specifically, you have asked whether a "selective reduction" to reduce the number of unborn children in a multiple pregnancy in order to enhance the medical prospects for the remaining unborn children would be a prohibited abortion under Neb. Rev. Stat. § 44-1615.01 (1998).
"Selective reduction" is a "procedure in which one [or more] fetus[es] of several may be terminated." Provenzano v. IntegratedGenetics, 22 F. Supp.2d 406, 408 (C.D.N.J. 1998). Thus, the term selective reduction is a euphemism for a type of abortion.[1]
Under Nebraska law, publicly-financed or subsidized insurance cannot include coverage for abortions except under specified circumstances:
 No group insurance contract or health maintenance agreement
providing hospitalization, medical surgical, accident, sickness, or other health coverage paid for in whole or in part with public funds shall include coverage for abortion, as defined in section 28-326. This section shall not apply to coverage for an abortion which is verified in writing by the attending physician as necessary to prevent the death of the woman. . . . This section shall not prohibit the insurer from offering individual employees special coverage for abortion if the costs for such coverage are borne solely by the employee.
Neb. Rev. Stat. Aim. § 44-1615.01 (Michie 1995) (emphasis added).[2]
The term "abortion", for purposes of this statute, is defined as "the use or prescription of any instrument, medicine, drug, or other substance or device intentionally to terminate the pregnancy of a woman known to be pregnant with an intention otherthan to increase the probability of a live birth, to preserve thelife or health of the child after live birth, or to remove a dead unborn child, and which causes the premature termination of the pregnancy. Neb. Rev. Stat. Ann. § 28-3261 (1) (Michie 1998 Supp.) (emphasis added).
The emphasized language gives rise to the question of whether the statutory definition of abortion excludes selective reduction abortions since they are usually performed to increase the probability of survival and health of the remaining unborn children.[3] However, when the relevant provisions are read in the context of all Nebraska's abortion statutes, it is clear that selective reduction abortions may not be paid for with publicly-financed or subsidized health insurance.
First of all, the Legislature has expressly adopted, as public policy, the intention "to provide protection for the life of the unborn child whenever possible." Neb. Rev. Stat. §28-325. Furthermore, the most specific relevant statute, Neb. Rev. Stat. § 44-1615.01, contains an exception to the prohibition on insurance coverage for abortions only where the abortion is "necessary to prevent the death of the woman." Finally, the exclusion from the definition of abortion for procedures performed with an intention "to increase the probability of a live birth" and "to preserve the life or health of the child after live birth" is simply a clarification necessary to distinguish procedures intended to kill babies from procedures intended to deliver live babies. If not for this definitional clarification, all induced deliveries would be "abortions" since they utilize instruments and drugs to intentionally terminate the pregnancy (even if only a few minutes, hours or days prior to natural delivery). Doctors commonly induce faster deliveries by giving the mother labor-inducing drugs and/or by breaking the amniotic sac. Caecerian deliveries may be performed to hasten the delivery of unborn children in distress.
In sum, Nebraska law prohibits group insurance paid for in whole or in part with public funds from including coverage for abortion, including "selective reduction" abortions. The only exception is for abortions necessary to prevent the death of the mother. Insurers are permitted to offer individual employees special coverage for other abortions, at their own expense. See
1981 Op. Att. Gen. No. 92 (May 8, 1991) (discussing availability of insurance coverage for abortion at employee expense).
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
APPROVED BY:
Don Stenberg 
Attorney General
[1] "The two doctors whose letters accompanied your request attempt to distinguish their "selective reduction" procedures from abortion. However the distinction is semantical. Although the procedure unquestionably has possible beneficial impact on the remaining unborn children, this does not negate the fact that it is still the intentional killing of an unborn child or children. All abortion providers typically characterize their procedures as being beneficial in some way. See, e.g., Carhart v.Stenberg, 11 F. Supp.2d 1099 (D.Neb. 1998). Selective reduction is not normally performed to prevent the death of the mother. If a situation arose in which it was necessary to prevent the mothers death, it is expressly excluded from the prohibition on public funding contained in § 44-1615.01.
[2] The constitutionality of this provision was discussed in 1979-80 Report of the Attorney General 406 (Op. No. 283, dated April 17, 1980). See also 1979-80 Report of Attorney General 301 (Op. No. 210, dated Feb. 1, 1980).
[3] Not all selective reduction abortions are performed to aide the remaining siblings. The only reported decision we were able to locate in which selective reduction is discussed is a "wrongful birth" case in which parents sought damages from a doctor for allowing one twin child to be born with birth defects.Provenzano, 22 F. Supp.2d at 408.